## Gray v. Louisville Railway Company.

(Decided May 6, 1919.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, First Division).

Carriers—Passengers—Personal Injury—Action for Damages—Evidence—Sufficiency.—In a passenger's action for personal injuries, caused by the closing of the vestibule door on her skirt as she attempted to alight, evidence of negligence examined and held insufficient to take the case to the jury.

EDWARDS, OGDEN & PEAK for appellant.

HOWARD B. LEE and STRAUS, LEE & KRIEGER for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Mrs. Grace Gray brought this suit against the Louisville Railway Company to recover damages for personal injuries. At the conclusion of all the evidence, the court sustained defendant's motion for a peremptory instruction. Judgment was entered accordingly and the plaintiff appeals.

On the morning of the accident plaintiff boarded one of defendant's cars for the purpose of going to Baxter avenue. When the car stopped at Baxter avenue she picked up her suit case, umbrella and hand bag and

started through the door leading from the car into the vestibule for the purpose of getting off. The door was closed on her skirt, thereby tripping her and causing her to fall and receive the injuries of which she complains. Her account of the accident is as follows:

"Q. As you neared the Baxter avenue stop, how many persons were in the body of the car? A. About five—four or five. Q. How close was the closest passenger from the door leading from the body of the car on to the front platform or vestibule? A. He was on the first short seat going that way. There was a long seat, and then he was on the second short seat. Q. Second short seat? A. Yes, sir. Q. Could you say about how far that was from the door? A. Well, there was two little seats turned longways. He was as far from the door as from here to that window. Q. Some six or eight feet? A. Yes, sir. Q. How many persons, if you have an idea, were on the front vestibule with the motorman? A. There were three. Q. Did you know anybody that was on the car or on the front vestibule? A. No, sir. Q. Describe to the jury what happened when the car stopped at the Baxter avenue stop. A. I picked up my suit case and my umbrella and hand bag. I had a suit case in my right hand and I opened the door and stepped down into the vestibule, and then, just as soon as I stepped down I heard the door slam, and then I went on down to the street and fell. Q. Did you see any person take hold of the door after you came out? A. No, sir. Q. Did you see any movement made by any one towards the door, the one that closed? A. I was looking where I was stepping, and I had so much baggage, and I was just looking where I was stepping, and I didn't see anybody. Q. Where was the motorman at that time? A. There was somebody in a uniform that was standing near my left. Q. Did you see what he was doing at the time the door closed? A. I was looking down to see where I was walking. Q. Who was the closest man to the door? A. This man in this blue uniform. Q. You noticed the employes. Was he in the uniform of a street railway employe? A. Yes, sir. Q. Could you say whether that was a motorman or not? A. Yes, sir; he was the motorman. Q. Then what happened, madam? A. Well, my dress was a wide dress, that gave me a chance to take a step and then I fell into the street. Q. What threw you into the street? A. The bottom of my dress was caught in

the door, the hem, that tripped me, and I fell.  Q. Do you know how it loosened from the door?  A. Oh, it tore and pulled loose from the waist.  Q. Did it pull the garment entirely off of you?  A. It was coming off and torn all along here.  Q. How did you get it out from the door?  A. My weight pulled it out.''

For the defendant, its motorman testified that as the plaintiff was leaving the car, the vestibule door was closed upon her skirt.  He did not see who closed the door, but stated positively that he did not close it.  The passengers, J. E. Bates and Howard M. Nelson, who were on the car at the time, and were in a position to see what occurred, stated that the motorman did not touch the door but that it was closed by a passenger on the inside of the car.

It is not seriously contended that any defect in the door caused it to close.  The door was not operated by mechanism under the sole control of the defendant.  It was a door that could be opened and closed not only by the defendant's employes, but by any passenger who saw fit to do so.  At the time of the accident the car was standing still.  The door would not close unless force was applied.  Under these circumstances the mere closing of the door was not evidence that the door was defective, and that the defect was known or could have been known by the exercise of proper care.  Indeed, plaintiff's whole case rests on whether there was sufficient evidence to show that the motorman was negligent in closing the door or in not preventing some other persons from doing so.  Plaintiff did not undertake to say that the motorman closed the door, nor did she say that it was not closed by one of the passengers.  She was carrying not only her valise, but her umbrella and hand bag, and was looking where she was going.  Reduced to its final analysis, her evidence is merely to the effect that as she went out of the car the nearest passenger was six or eight feet from the door and the motorman was only about three feet from the door.  This evidence was not even sufficient to raise the presumption that the motorman closed the door.  It merely showed that according to her recollection of the position of the nearest passenger, it was more convenient for the motorman to have closed the door.  But even if it be conceded that her testimony was sufficient to raise the presumption that the motorman did

close the door, this presumption was overcome by his positive testimony that he did not do so, and by the positive testimony of two disinterested witnesses that the door was closed by a passenger on the inside. That this could have been done without the knowledge of plaintiff is very clear, because she was encumbered with her hand baggage and had her mind on making her exit in safety, and her testimony in no wise contradicted the testimony of the witnesses for the defendant. There is nothing in the record to suggest that the motorman knew, or by the exercise of the proper degree of care could have known, of the purpose of the passenger to close the door at a time when it was dangerous to do so. The closing of the door required the briefest period of time, and no action on the part of the motorman could have prevented the injury. It follows that the motion for the peremptory was properly sustained.

Judgment affirmed.